IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DANIEL V. GALLEGOS,

    Plaintiff,

vs.                                      No. 1:20-CV-00634-WJ-KRS

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

    Defendant.

## **PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

Plaintiff Daniel V. Gallegos, appearing pro se, seeks review of the Commissioner's determination that he is not entitled to disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. On March 29, 2021, in accordance with 28 U.S.C. § 636(b)(1)(B), (b)(3), this case was referred to United States Magistrate Judge Kevin R. Sweazea to conduct any necessary hearings and to recommend an ultimate disposition. (*See* Doc. 19) (Order of Reference). Having considered Plaintiff's Motion to Reverse or Remand (Doc. 28), filed November 5, 2021; the Commissioner's response in opposition (Doc. 34), filed March 9, 2022; and Plaintiff's reply brief (Doc. 35), filed April 11, 2022,[1] the undersigned RECOMMENDS that the Court DENY Plaintiff's motion for the reasons set forth below.

### I. PROCEDURAL BACKGROUND

On October 10, 2017, Plaintiff filed an initial application for disability insurance benefits. (*See* Administrative Record ("AR") at 88).[2] Plaintiff alleged he had become disabled on

---

[1] Plaintiff's reply was filed well beyond the March 23, 2022 deadline for doing so (*see* Doc. 32), and Plaintiff offers no explanation for the belated filing. Nor has Plaintiff sought an extension of the filing deadline. Nevertheless, in the interests of justice, the undersigned has considered and addressed the arguments raised in that filing.

[2] Plaintiff asserts in his reply brief that he filed his claim on December 2, 2016. (*See* Doc. 35 at 1, 3). That is not accurate. (*See* AR at 42) (ALJ decision noting application date of October 10, 2017); (*id.* at 88, 124) (same as to notices of disability determination); (*see also id.* at 200-03) (October 12, 2017 notice of receipt of claim). Plaintiff

December 2, 2016, due to a head injury, headaches, lower back pain, neck pain, seizures, loss of hearing, trembling in his hands, memory loss, equilibrium issues, soreness relating to a fall, anxiety, and high blood pressure. (*See id.* at 89-90). His application was denied at the initial level on February 22, 2018 (*id.* at 88), and at the reconsideration level on June 4, 2018 (*id.* at 124). Plaintiff requested a hearing (*see id.* at 143-45), which ALJ Cole Gerstner conducted on June 13, 2019 (*id.* at 61-87). Plaintiff was represented by counsel and testified at the hearing (*id.* at 64-82), as did a vocational expert (the "VE") (*id.* at 66, 82-86).

On August 23, 2019, the ALJ issued his decision finding that Plaintiff was not disabled under the relevant sections of the Social Security Act. (*Id.* at 42-54). On May 4, 2020, the Appeals Council denied Plaintiff's request for review (*id.* at 1-4), which made the ALJ's decision the final decision of the Commissioner. In denying the request for review, the Appeals Council declined to consider additional evidence—specifically, medical records from Plaintiff's providers post-dating the ALJ's decision—as not relating to the period at issue and not affecting the outcome of his claim. (*See id.* at 2); (*see also id.* at 7-32, 35-38) (evidence rejected by Appeals Council). On July 1, 2020, Plaintiff filed the complaint in this case seeking review of the Commissioner's decision. (Doc. 1).

## II. LEGAL STANDARDS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016); *see also* 42 U.S.C. § 405(g). If substantial evidence supports the ALJ's findings and the correct legal standards were applied,

---

appears to have mistakenly conflated his *application date* with his *alleged onset date* of December 2, 2016. (*See, e.g., id.* at 42, 88, 90, 106, 124).

the Commissioner's decision stands, and the plaintiff is not entitled to relief. *See, e.g.*, *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Although a court must meticulously review the entire record, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *See, e.g.*, *id.* (quotation omitted).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted); *Langley*, 373 F.3d at 1118 (quotation omitted). Although this threshold is "not high," evidence is not substantial if it is "a mere scintilla," *Biestek*, 139 S. Ct. at 1154 (quotation omitted); "if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118; or if it "constitutes mere conclusion," *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005) (quotation omitted). Thus, the Court must examine the record as a whole, "including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan*, 399 F.3d at 1262. While an ALJ need not discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence," and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). "Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quotation omitted).

### B. Disability Framework

"Disability," as defined by the Social Security Act, is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration ("SSA") has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *Wall v. Astrue*, 561 F.3d 1048, 1051-52 (10th Cir. 2009); 20 C.F.R. §§ 404.1520, 416.920. If a finding of disability or non-disability is directed at any point, the SSA will not proceed through the remaining steps. *Thomas*, 540 U.S. at 24. At the first three steps, the ALJ considers the claimant's current work activity and the severity of his impairment or combination of impairments. *See id.* at 24-25. If no finding is directed after the third step, the Commissioner must determine the claimant's residual functional capacity ("RFC"), or the most that he is able to do despite his limitations. *See* 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). At step four, the claimant must prove that, based on his RFC, he is unable to perform the work he has done in the past. *See Thomas*, 540 U.S. at 25. At the final step, the burden shifts to the Commissioner to determine whether, considering the claimant's vocational factors, he is capable of performing other jobs existing in significant numbers in the national economy. *See id.*; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

### III.  THE ALJ'S DETERMINATION

The ALJ reviewed Plaintiff's claim pursuant to the five-step sequential evaluation process. (AR at 43-44). First, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2021, and that he had not engaged in substantial gainful activity since his alleged onset date of December 2, 2016. (*See id.* at 44). The ALJ then found at step two that Plaintiff suffered from the following severe impairments: osteoarthritis,

hearing loss, moderate neurocognitive disorder, alcohol abuse in remission, obstructive sleep apnea, carpal tunnel syndrome bilaterally with releases, and obesity. (*Id.*). The ALJ also found evidence of a nonsevere impairment in the form of seizures from alcohol withdrawal. (*See id.* at 44-45).

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met the criteria of listed impairments under Appendix 1 of the SSA's regulations. (*Id.*). In so holding, the ALJ found that Plaintiff was only moderately limited in each of the four broad areas of mental functioning, meaning he did not satisfy the "paragraph B" criteria of Appendix 1 § 12.02 (neurocognitive disorders), and that the record also did not establish that the "paragraph C" criteria of that listing had been satisfied. (*See id.* at 45-46).

Proceeding to the next step, the ALJ reviewed the evidence of record, including medical opinions and evidence from treating and consulting providers, prior administrative medical findings, and Plaintiff's own subjective symptom evidence. (*See id.* at 47-52). Having done so, the ALJ concluded that Plaintiff possessed an RFC to perform light work with certain additional exertional and nonexertional restrictions. (*See id.* at 47). Based on this RFC, the ALJ found that Plaintiff was unable to perform any past relevant work. (*See id.* at 52).

Moving to step five, the ALJ determined that Plaintiff was able to perform other jobs existing in significant numbers in the national economy. (*See id.* at 52-53). The ALJ therefore concluded that Plaintiff's work was not precluded by his RFC and that he was not disabled. (*See id.* at 53).

## IV. DISCUSSION

### A. Issues Collateral to the ALJ's Decision

Although Plaintiff's arguments generally center on purported errors by the ALJ, two of Plaintiff's apparent claims, when liberally construed, could be read as relating to matters outside of that context. The undersigned addresses those issues before turning to the alleged errors in the ALJ's decision.

#### 1. Additional Evidence Before the Appeals Council

Plaintiff contends that the SSA "has improperly reviewed my medical documentation – including reviewing documents from my personal physician." (Doc. 28 at 2). He continues by "requesting the [ALJ] review my medical documentation as my medical conditions are ongoing and continuous." (*Id.*). In light of the latter statement and Plaintiff's pro se status, the undersigned liberally construes his motion as challenging the Appeals Council's decision not to consider certain medical records submitted after the ALJ reached his decision. (*See* AR at 2); *see also, e.g.*, *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers.").

"[W]here the Appeals Council rejects new evidence as non-qualifying and the claimant challenges that ruling on judicial review," such an appeal presents a question of law that is reviewed *de novo* by the Court. *See Krauser v. Astrue*, 638 F.3d 1324, 1328 (10th Cir. 2011) (emphasis omitted). Under SSA regulations, when evidence is presented for the first time to the Appeals Council, that body will only consider the evidence if it "is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5);

6

*see also id.* § 404.970(b) (incorporating subsection (a)(5) criteria into rules for considering additional evidence).³ The undersigned construes the latter clause as imposing a heightened materiality requirement. *See Hanna v. Kijakazi*, No. 1:20-cv-00132 KRS, 2021 WL 3169203, at *5 (D.N.M. July 27, 2021) (collecting District of New Mexico decisions reaching the same conclusion). "[T]he Appeals Council's dismissal of the additional evidence's import [under a subsection (a)(5) criterion] indicates that it ultimately found the evidence did not qualify for consideration at all." *Padilla v. Colvin*, 525 F. App'x 710, 712 (10th Cir. 2013) (unpublished) (noting that the § 404.970(a)(5) criteria amount to "predicate requirements . . . to warrant consideration" of additional evidence).⁴

Plaintiff's apparent claim largely concerns the third factor of the § 404.970(a)(5) analysis, *i.e.*, whether additional evidence "relates to the period on or before the date of the hearing decision." According to internal SSA policies, additional evidence relates to the relevant period if it "is dated on or before the date of the hearing decision, or the evidence post-dates the hearing decision but is reasonably related to the time period adjudicated in the hearing decision." *See* Hearings, Appeals, and Litigation Law Manual ("HALLEX") § I-3-3-6(B)(2); *see also, e.g.*, *Hanna*, 2021 WL 3169203, at *6 (relying on HALLEX definition, given that it "does not obviously conflict with any binding Tenth Circuit precedent on the issue").

---

³ Section 404.970(b) requires that the claimant show not only novelty, materiality, and chronological pertinence, but also that there was "good cause for not informing [SSA] about or submitting the evidence" no later than five business days before the ALJ's hearing. *See* 20 C.F.R. § 404.970(b) (citing 20 C.F.R. § 404.935). The undersigned has previously observed that jurists in this District are in disagreement "as to whether a reviewing court should address the recently-enacted good-cause requirement of § 404.970(b) where the Appeals Council did not reject evidence on that basis." *E.g.*, *Marquez v. Saul*, No. 1:20-cv-00110 KRS, 2021 WL 2073510, at *4 n.3 (D.N.M. May 24, 2021) (citations omitted). Because Plaintiff's additional evidence was properly rejected on other grounds, the Court need not resolve that issue in this case.

⁴ The undersigned cites *Padilla*, other unpublished decisions of the Tenth Circuit, and the district court decisions referenced in this opinion for their persuasive value unless otherwise stated.

The Appeals Council's rejection of Plaintiff's additional evidence, on the grounds that it "does not relate to the period at issue" (AR at 2), comports with this standard. Although Plaintiff submitted about 30 pages of medical records for Appeals Council review, these records are dated no earlier than November 1, 2019. (*See id.* at 7-32, 35-38). In other words, the records plainly postdate the ALJ's August 23, 2019 decision. (*See id.* at 54). Further, as the medical records mostly reflect contemporaneous medical issues raised by Plaintiff as of the examination dates, the undersigned does not see grounds for concluding that the materials are "reasonably related to the time period adjudicated," *see* HALLEX § I-3-3-6(B)(2), and Plaintiff has articulated no argument for concluding otherwise, *see James v. Wadas*, 724 F.3d 1312, 1315 (10th Cir. 2013) (citing *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005)) ("[W]e liberally construe [a pro se party's] filings, but we will not act as his advocate.").[5]

In the alternative, the undersigned finds that the records were also properly rejected for lack of materiality. (*See* AR at 2) (concluding that additional evidence "does not affect the decision about whether you were disabled beginning on or before August 23, 2019"). Plaintiff has articulated no reason to believe that there is a "reasonable probability" that the records at issue would have changed the outcome of the ALJ's decision had they been considered, *see* 20 C.F.R. § 404.970(a)(5), and the Court cannot make that argument for him, *see, e.g.*, *James*, 724 F.3d at 1315.

---

[5] Although some of the additional evidence refers in passing to time periods before the ALJ's decision, none of the documents appear to be "reasonably related" to that time period. For example, although a November 2019 letter from Stephanie V. Lucero, M.D., acknowledges Plaintiff's treatment "[s]ince April of this year" (AR at 28), accompanying records show that Plaintiff only began receiving treatment from Dr. Lucero on October 4, 2019 (*id.* at 35-36), and the letter focuses primarily on testing done on or after that date (*id.* at 28-29).

Having conducted a *de novo* review, the undersigned concludes that the Appeals Council's rejection of Plaintiff's post-decision additional evidence was proper. Remand is not recommended as to Plaintiff's apparent claim to the contrary.

2. Ineffective Assistance

At one point, Plaintiff suggests that his attorney erred by failing to inform him he could collect and present testimonial evidence at the ALJ hearing. (*See* Doc. 28 at 4-5). This argument could be read as asserting a claim of ineffective assistance of counsel. However, "courts throughout the Tenth Circuit and elsewhere have persuasively and unerringly found claims of ineffective assistance to be without merit when raised in the context of a Social Security appeal under [42 U.S.C.] § 405(g)." *Esparza v. Kijakazi*, No. 2:20-cv-00537 WJ/KRS, 2021 WL 4352305, at *4 (D.N.M. Sept. 21, 2021) (citing, *e.g.*, *Winick v. Colvin*, 674 F. App'x 816, 819 (10th Cir. 2017) (unpublished)), *PFRD adopted*, Order Adopting Magistrate Judge's Proposed Findings and Recommended Disposition, ECF No. 34 (D.N.M. Oct. 15, 2021); *see also Nelson v. Boeing Co.*, 446 F.3d 1118, 1119 (10th Cir. 2006) (citing, *e.g.*, *MacCuish v. United States*, 844 F.2d 733, 735 (10th Cir. 1988)) ("The general rule in civil cases is that the ineffective assistance of counsel is not a basis for appeal or retrial."); *Banta v. Chater*, No. CIV-94-1754-A, 1995 WL 864573, at *3 (W.D. Okla. Dec. 1, 1995) ("[T]he purpose of judicial review [of SSA decisions] is not to sanction the claimant's attorney for unprofessional conduct, to judge the effectiveness of the claimant's attorney under constitutional standards, or to provide advocacy for a claimant who has received inadequate legal services," but rather "to determine whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied."). Therefore, "[t]o the extent that Plaintiff seeks remand on the basis that [his] attorney was ineffective, such an outcome is unwarranted." *Esparza*, 2021 WL 4352305, at *4.

### B. The ALJ's Decision

In challenging the ALJ's decision, Plaintiff primarily focuses his claims on alleged errors at step four of the sequential evaluation process.[6] More specifically, the undersigned construes Plaintiff's motion as attacking the ALJ's characterization of certain evidence (*see* Doc. 28 at 3), his purported failure to address other evidence of record (*see id.* at 2, 4, 6-7), his development of the record (*see id.* at 3-4), and the evidentiary basis for his decision (*see id.* at 5, 6, 7). Plaintiff also appears to object to the ALJ's reliance on the VE's testimony at step five of the sequential evaluation process. (*See id.* at 7). For the reasons discussed below, the undersigned concludes that remand is not warranted on any of these bases and that Plaintiff has not otherwise shown that the ALJ's decision suffers from reversible error.

### 1. Alleged Step Four Errors

The Tenth Circuit requires an ALJ to provide a "minimal level of articulation" of his assessment of the evidence of record at any stage of the sequential evaluation process, including when evaluating a claimant's RFC at step four:

> The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence. Rather, in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.

*Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (internal citations omitted). As a corollary of this rule, the ALJ may not "pick and choose" from among the record, "using portions of evidence favorable to his position while ignoring other evidence." *Carpenter v.*

---

[6] The Commissioner interprets several of Plaintiff's claims as implicating the ALJ's decision not to categorize certain impairments as severe at step two of the sequential evaluation process. (*See* Doc. 34 at 5-6). It is not clear that this properly characterizes Plaintiff's claims, which appear to be focused on the ALJ's evaluation of his medical evidence and RFC at step four. However, insofar as Plaintiff asserts error at step two, the Commissioner is correct in arguing that any such error is harmless since the ALJ concluded that Plaintiff could not be denied benefits at that step of the analysis. *See, e.g.*, *Carpenter v. Astrue*, 537 F.3d 1264, 1265-66 (10th Cir. 2008).

*Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (quotation omitted). Nor may an ALJ "mischaracterize or downplay evidence to support her findings." *Bryant v. Comm'r, SSA*, 753 F. App'x 637, 641 (10th Cir. 2018) (unpublished) (citing *Talbot v. Heckler*, 814 F.2d 1456, 1463-64 (10th Cir. 1987)). Failure to follow these controlling legal standards is grounds for remand. *See, e.g.*, *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984).

Plaintiff argues that the ALJ's characterization of his activities of daily living ("ADLs") "is not factual." (Doc. 28 at 3). He takes particular issue with the ALJ's statement that he "is able to perform his personal care, prepare meals, count change[,] handle a savings account, use a checkbook/money order, and finish what he starts." (*See, e.g.*, AR at 48). But the ALJ cited to Plaintiff's own function report in support of this determination (*see id.*), and Plaintiff confirmed in that function report that he could perform each of these tasks (*see id.* at 239-46). Although Plaintiff alleges additional exertional limitations that find support in that function report, he attributes those limitations to his musculoskeletal conditions and associated pain. (*See* Doc. 28 at 3) (describing, among other things, inability to bend). Yet the ALJ properly explained his basis for determining that Plaintiff's back and neck conditions were less limiting than Plaintiff alleges in his subjective symptom evidence. (*See, e.g.*, AR at 49) (acknowledging findings of back pain, but citing medical records finding full range of motion, intact sensation, ability to squat and rise, and normal gait); *see also White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2002) (holding that ALJ subjective symptom evaluations "warrant particular deference"). The undersigned concludes that the ALJ's characterization of Plaintiff's ADLs was supported by substantial evidence.

The undersigned reaches the same conclusion as to the ALJ's characterization of Plaintiff's history of seizures. Although the ALJ found that Plaintiff "has not had any subsequent seizures" since just after he stopped drinking in 2017 (*see* AR at 44), Plaintiff argues that this is

inaccurate and that the ALJ has "ignore[d]" seizures he has suffered since that time (*see* Doc. 35 at 4); (*see also* Doc. 28 at 7) (argument regarding seizures). However, Plaintiff does not point to any documents in the record before the ALJ that substantiate his assertion that he suffered any further seizures during the relevant period,[7] and the undersigned has not found evidence of seizures after September 2017 in the relevant medical records. (*See, e.g.*, AR at 561) (December 2017 record finding "last seizure was likely in September 2017"); (*see also, e.g.*, *id.* at 642) (November 2018 record reporting "last [seizure] episode 1 year ago"); (*id.* at 686) (reporting "negative for seizures" in November 2018); (*id.* at 1012) (reporting in December 2018 that Plaintiff "has stopped drinking since September 10, 2017 and has had no further seizures."). The undersigned concludes that the ALJ's characterization of Plaintiff's seizure history, based on the record before him, was not improper and was supported by substantial evidence.

Plaintiff next argues that the ALJ committed reversible error by failing to address certain evidence in the record. First, Plaintiff points out that the ALJ did not discuss a third-party function report provided by his fiancée. (*See* Doc. 28 at 4); (*see also* AR at 261-69) (fiancée's function report). Plaintiff correctly regards this as legal error, since "an ALJ is specifically required to consider all medical and nonmedical evidence, including third party function reports." *Garling v. Kijakazi*, No. 3:20-CV-369-DRL-JPK, 2021 WL 3728544, at *6 (N.D. Ind. July 20, 2021) (citing, *e.g.*, 20 C.F.R. § 404.1529(c)(3)), *R&R adopted*, 2021 WL 3726870 (N.D. Ind. Aug. 23, 2021).[8] However, Plaintiff has not shown that this error was harmful. *See, e.g.*,

---

[7] Although Plaintiff alleges that he suffered additional seizures after the ALJ issued his decision, including seizures as recent as March 2022 (*see* Doc. 35 at 4, 7), no records of these events could have been before the ALJ when he issued his decision in August 2019. Nor, without more, may the Court itself consider such materials. *See* 42 U.S.C. § 405(g) (limiting judicial review of SSA decisions to "the pleadings and transcript of the record"). Whether Plaintiff's allegations of more recent seizures might properly support a subsequent claim for disability insurance benefits is a question beyond the scope of the Court's review in this case.

[8] The SSA's new regulations concerning the articulation requirements for evaluating medical and nonmedical evidence, *see, e.g.*, 20 C.F.R. § 404.1520c(d), do not absolve the ALJ of the need to consider and address nonmedical evidence when it is present in the record. *See, e.g.*, *Jerri F. v. Kijakazi*, C/A No. 1:20-4037-RMG-SVH,

*Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."). A review of the fiancée's function report reveals allegations that largely mirror those that the ALJ discounted due to their inconsistency with Plaintiff's own function report (*see* AR at 47-48) and with the medical evidence of record (*see id.* at 48-49). "[T]he absence of an ALJ discussion about a lay witness statement will amount to harmless error in cases where the same evidence discussed by the ALJ in discounting the claimant's allegations also discredits the lay witness statement." *Miranda R.A. v. Kijakazi*, No. 20-cv-453 NDF/SH, 2022 WL 1005303, at *4 (N.D. Okla. Apr. 4, 2022) (citing *Best-Willie v. Colvin*, 514 F. App'x 728, 736 (10th Cir. 2013) (unpublished)). Absent further argument, the undersigned concludes that the ALJ's failure to address his fiancée's function report does not require remand.

Plaintiff also contends that the ALJ "overlooked" his subjective symptom testimony concerning his spontaneous fainting spells. (Doc. 28 at 6-7). In his decision, the ALJ did not discuss Plaintiff's hearing testimony that he suffered from fainting spells and that his provider, Nishiena Gandhi, M.D., directed him not to drive, not to work at elevated surfaces, and to limit his lifting[9] as a result of this issue. (*See, e.g.*, AR at 69-71); (*see also, e.g., id.* at 610-12) (records of December 2017 medical appointment where Plaintiff reported he was "positive" for "fainting" and Dr. Gandhi gave generalized "instructions for management" and "risk factor reductions"). However, Plaintiff's RFC expressly provides for all related limitations that he claims were

---

2021 WL 3362227, at *13-14 (D.S.C. July 29, 2021) (collecting cases in support of this conclusion), *R&R adopted*, 2021 WL 3396230 (Aug. 3, 2021); *Garling*, 2021 WL 3728544, at *6 (same).

[9] Plaintiff did not further elaborate on the nature or extent of any lifting restrictions allegedly imposed by Dr. Gandhi, and she did not address any lifting restrictions in her treatment records (*see* AR at 603-12) or in the opinion she later provided (*see id.* at 613). Although Plaintiff testified that Dr. Gandhi "didn't want me to no lift [*sic*],", he did not clarify this comment when prompted by the ALJ (*see id.* at 71), and he later testified that he "could probably lift 20 pounds" (*id.* at 80). Notably, Plaintiff's RFC includes a restriction to only "occasional" lifting of 20 pounds and "frequent" lifting of 10 pounds. (*Id.* at 47).

imposed by Dr. Gandhi. (*See* AR at 47) (providing, *inter alia*, that Plaintiff is limited in his lifting capability, "can never work at unprotected heights," and can "never drive a motor vehicle"). Thus, even if the ALJ erred by failing to explicitly address Plaintiff's alleged fainting spells, there is no indication that any reasonable factfinder who had properly discussed that condition would have concluded that further RFC restrictions were required. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (discussing harmless-error standard); *cf. Mays v. Colvin*, 739 F.3d 569, 578-79 (10th Cir. 2014) ("[A]n ALJ's failure to weigh a medical opinion involves harmless error if there is no inconsistency between the opinion and the ALJ's assessment of residual functional capacity.").

In his reply brief, Plaintiff also suggests that the ALJ overlooked opinions from consultative examiner Thomas Dhanens, Ph.D., concerning the nature and extent of his mental limitations. (*See* Doc. 35 at 8). Since Plaintiff did not raise this argument in his motion, it is likely waived. *See, e.g.*, *Marquez v. Saul*, No. 1:20-cv-00110 KRS, 2021 WL 2073510, at *4 (D.N.M. May 24, 2021) (citing *United States v. Redcorn*, 528 F.3d 727, 738 n.4 (10th Cir. 2008)) ("The Tenth Circuit follows the general rule that an argument raised for the first time in a reply brief is deemed abandoned or waived."). More to the point, the ALJ directly addressed Dr. Dhanens's opinions on this issue and concluded that they were only partially persuasive, in part due to their inconsistency with his ADLs and other evidence of record concerning Plaintiff's mental functioning. (*See* AR at 51). Aside from his arguments with respect to the ALJ's characterization of his ADLs, which the undersigned has already addressed, Plaintiff has not challenged the ALJ's determinations regarding the persuasive value of Dr. Dhanens's report. To the extent that Plaintiff's reply brief could be read to assert such a challenge, the undersigned finds that the ALJ articulated an adequate basis for his determinations. *See* 20 C.F.R.

§ 404.1520c(2) (noting that determinations regarding persuasive value of medical opinions may be premised on consistency with "evidence from other medical sources and nonmedical sources in the claim").[10]

More broadly, Plaintiff contends that the SSA "has improperly reviewed my medical documentation." (Doc. 28 at 2). Yet aside from stating that this argument concerns "documents from my personal physician" (*id.*), Plaintiff does not identify the physician in question, enumerate the documents he is referring to, or explain why the ALJ's review of those documents may have been improper. The AR contains medical evidence from one of the two primary-care providers listed in the record that was before the ALJ, and the ALJ expressly—and by all indications properly—cited to treatment records from that provider in support of his findings. (*See, e.g.*, AR at 603) (listing Mirta Rodriguez-Lugo, M.D. as primary-care physician); (*id.* at 546-60) (records from Dr. Rodriguez-Lugo); (*see also, e.g., id.* at 44, 49) (citing to records from Dr. Rodriguez-Lugo).[11] Although Plaintiff may be referring to records from another provider, it is not the Court's duty to scour the voluminous record to figure out whether this is the case. *See, e.g., Kirkpatrick v. Colvin*, 663 F. App'x 646, 649 (10th Cir. 2016) (unpublished) ("[I]t isn't [the court's] obligation to search the record and construct a party's arguments."). Without more, this argument presents no grounds for relief.

Quoting passages from 20 C.F.R. § 404.1545(a), Plaintiff also suggests that the ALJ was responsible for seeking out more of his "family, friends, or neighbors" to obtain more information about his RFC. (*See* Doc. 28 at 3-4). This argument misunderstands the applicable evidentiary burden. With respect to the first four steps of the sequential evaluation process, the

---

[10] Because Plaintiff's claim was filed after March 27, 2017, the regulatory language found at 20 C.F.R. § 404.1527 concerning the handling of medical opinion evidence does not apply to this proceeding.
[11] Although Plaintiff submitted evidence from a third primary-care physician to the Appeals Council (*see, e.g.*, AR at 28-29), the undersigned has already addressed the Appeals Council's rejection of that evidence.

15

claimant generally bears the burden to provide evidence relevant to his or her disability. *See, e.g.*, 20 C.F.R. § 404.1512(a)(1) ("In general, you have to prove to us that you are blind or disabled. You must inform us about or submit all evidence known to you that relates to whether or not you are blind or disabled.") (internal citation omitted). While the ALJ was required to consider "descriptions and observations of your limitations . . . provided by you, your family, neighbors, friends, or other persons," it was Plaintiff's responsibility to provide those descriptions and observations in the first instance, or to at least alert the ALJ to their existence. *See* 20 C.F.R. § 404.1545(a)(3). And contrary to Plaintiff's assertion that he was not told he could present evidence from such persons at the ALJ hearing (*see* Doc. 28 at 4), the record reflects he was informed of his right to subpoena any person "to submit documents or testify at [his] hearing" when he was provided notice of that hearing. (*See* AR at 164). Despite this notice, Plaintiff's counsel did not identify a need for additional documents or testimony at his hearing, and the ALJ had no duty of further inquiry when the record appeared to be adequately developed without that evidence. *See Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008) (holding that further development of record is not required where "sufficient information existed for the ALJ to make her disability determination"); *see also, e.g.*, *id.* (quoting *Hawkins v. Chater*, 113 F.3d 1162, 1167-68 (10th Cir. 1997)) ("[W]hen the claimant is represented by counsel at the administrative hearing, the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored. Thus, in a counseled case, the ALJ may ordinarily require counsel to identify the issue or issues requiring further development.").

In his remaining step-four arguments, Plaintiff contends that the ALJ "neglected to take my mental capabilities into account" (*see* Doc. 28 at 5) and suggests that his treatment history

and subjective symptom evidence warrant a different outcome (*see id.* at 6) (discussing mental limitations and treatment regimen).[12] Because the ALJ did expressly address and consider Plaintiff's mental functioning (*see, e.g.*, AR at 46, 49), his treatment history (*see, e.g.*, *id.* at 48-52), and his subjective symptom evidence (*see id.* at 47-48), the undersigned construes these arguments as challenging the merits of the ALJ's step-four findings rather than asserting any legal error by the ALJ.

However, the Court is not positioned to say whether the ALJ's findings were *correct*; rather, the Court is constrained to determining whether those findings were supported by substantial evidence. *See, e.g.*, 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). While Plaintiff contends that he too has submitted substantial evidence in support of a finding of disability (*see, e.g.*, Doc. 35 at 4), the Court could not direct remand on this basis even if that were the case. Instead, Plaintiff must show that the ALJ's step-four findings were supported by only "a mere scintilla" of evidence, *see Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted), or that the evidence cited by the ALJ was "overwhelmed by other evidence in the record," *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). In light of the substantial evidence cited by the ALJ in his decision (*see generally* AR at 47-52), Plaintiff has not made such a showing. On this record, the undersigned finds no basis to conclude that the ALJ's determinations at step four, including his determinations as to Plaintiff's RFC, were unsupported by substantial evidence.

---

[12] The Commissioner interprets some of Plaintiff's arguments as challenging the ALJ's step-three findings. (*See* Doc. 34 at 6-7). Regardless of the step at issue, the undersigned's conclusion is the same: substantial evidence supported the ALJ's findings on these matters for the reasons described above.

In summary, Plaintiff has failed to establish that the ALJ committed harmful legal error in his review of Plaintiff's claim at step four, and Plaintiff has not shown that the ALJ's findings at that step were unsupported by substantial evidence. Consequently, the undersigned does not recommend remand as to any alleged step-four errors.

### 2. Alleged Step Five Errors

Finally, Plaintiff contends that the ALJ could not rely on evidence provided by the VE at the hearing because the VE "did not address [his] fainting incidents or any medications [he is] currently on" and "did not address [his] medical conditions," but instead only addressed work that could be done by a hypothetical person with his RFC. (*See* Doc. 28 at 7); (*see also* Doc. 35 at 10). To the extent that this argument is intended to challenge the ALJ's underlying RFC assessment, the undersigned has already explained why remand on that basis is unwarranted. Because no reversible error at that stage has been demonstrated, and because the ALJ's hypothetical question to the VE (*see* AR at 83-85) presented an RFC identical to the one ultimately adopted by the ALJ (*see id.* at 47), his reliance on the VE's testimony at step five was proper. *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000) (citing *Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993)) ("The ALJ propounded a hypothetical question to the VE that included all the limitations the ALJ ultimately included in his RFC assessment. Therefore, the VE's answer to that question provided a proper basis for the ALJ's disability decision.").

## V.  CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's Motion to Reverse or Remand (Doc. 28).

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN (14) DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c). Any request for an extension of time must be filed in writing no later than**

**seven (7) days from the date of this filing. A party must file any objections with the Clerk of the District Court within the fourteen (14) day period, together with any period for which an order is entered granting an extension of time, if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
**KEVIN R. SWEAZEA**
**UNITED STATES MAGISTRATE JUDGE**